UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TEXAS PACIFIC LAND TRUST, and, solely in their respective capacities as trustees for Texas Pacific Land Trust, DAVID E. BARRY and JOHN R. NORRIS III, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:19-CV-1224-B |
| ERIC L. OLIVER, | § § | |
| Defendant, | § § | |
| and | § § | |
| ERIC L. OLIVER, SOFTVEST, L.P., HORIZON KINETICS LLC, and ART-FGT FAMILY PARTNERS LIMITED, | § § § § | |
| Counterclaim Plaintiffs, | § § | |
| v. | § § | |
| DAVID E. BARRY and JOHN R. NORRIS III, in their individual capacities and in their capacities as trustees for the Texas Pacific Land Trust, | § § § § § | |
| Counterclaim Defendants, | § | |

MEMORANDUM OPINION AND ORDER

Pursuant to the Court's order setting a schedule for matters related to Counterclaim Plaintiffs'

motion for a declaratory judgment and preliminary injunction ("preliminary injunction motion"),

Plaintiffs filed an expedited motion for limited discovery. Doc. 54, Pls.' Mot. The parties have already

agreed to conduct some discovery before the hearing on the preliminary injunction motion. But Plaintiffs seek additional discovery on which the parties have not come to an agreement. After a review of the briefing, the Court **GRANTS** Plaintiffs' motion (Doc. 54).

## I.

## BACKGROUND

This case arises out of a dispute over the election of a trustee to the Texas Pacific Land Trust ("TPL"). Doc. 1, Compl. On one side of the dispute there are the two current TPL trustees, Plaintiffs David E. Barry and John R. Norris III, and on the other side there is a group of TPL shareholders holding more than 25% of the TPL's outstanding shares. The shareholder group includes Eric L. Oliver; Softvest, LP; ART-FGT Family Partners Limited; Allan Tessler; Tessler Family Limited Partnership; and Horizon Kinetics LLC (together referred to below as the "Horizon Group"). Horizon Kinetics is the single largest shareholder of the TPL, owning about 23% of its outstanding shares. Doc. 37, Mot. Prelim. Inj., 7. The other members of the Horizon Group own around 2%. *Id.*

The TPL is a publicly traded entity listed on the New York Stock Exchange ("NYSE"). Doc. 15, Am. Compl., ¶ 10. It is one of the largest private landowners in Texas, holding around 900,000 acres of land. *Id.* ¶ 2. The TPL is managed by three trustees, who serve until death, resignation, or disqualification. *Id.* On February 25, 2019, one of the trustees resigned. *Id.* ¶ 19. This left David E. Barry and John R. Norris III as the remaining trustees. *Id.* The TPL's Declaration of Trust ("DoT") provides that a new trustee shall be elected at a special meeting of the shareholders by "a majority in the amount of certificate holders present in person or by proxy[.]" *Id.*, Ex. A, 45. After the resignation, the election process for the open trustee position followed, whereby the current trustees identified and investigated candidates. *Id.* ¶ 24. Sometime after this process started, Allen

Tessler recommended Eric L. Oliver for the position. *Id.* ¶ 25. Barry and Norris reviewed Oliver's credentials and past interactions with the TPL but declined to nominate him for election. *Id.* ¶ 26. They instead nominated Preston Young, and announced this nomination in a Form 8-K filed on March 4, 2019. *Id.* The trustees then called for a special meeting to take place in Dallas, Texas on May 8, 2019. Doc. 37, Mot. Prelim. Inj., 6.

Despite the trustees' nomination of Young, the Horizon Group publicly disclosed in a Schedule 13D form filed on March 15, 2019 that they were nominating Oliver for election as trustee. Doc. 15, Am. Compl., ¶ 27. After this filing, the trustees started a dialogue with Murray Stahl, the CEO of Horizon, to come to some sort of compromise on a candidate. Doc. 15, Am. Compl., ¶ 28. At some point during these conversations, the TPL started a search process where it worked with a recruiting firm and other advisors to find other possible candidates for the position. *Id.* ¶ 29. In the meantime, the Horizon Group filed a preliminary proxy statement with the SEC on March 25, 2019 regarding Oliver's nomination. *Id.* ¶ 30. Also on this date, the trustees announced that they were postponing the special meeting scheduled for May 8, 2019 to May 22, 2019. *Id.* ¶ 37. The trustees allege that the delay was necessary to meet revised timelines for preparing and mailing proxy materials in a contested situation. *Id.* More discussions between Stahl and the trustees took place to try to reach a compromise on a candidate, but the Horizon Group eventually sent the trustees an email stating that they would not consider candidates other than Oliver. *Id.* ¶¶ 31–32.

On April 7, 2019, the trustees replaced their candidate Young with General Donald Cook, who one of the TPL's third-party advisors recommended. *Id.* ¶ 33. Counterclaim Plaintiffs allege that the trustees continued to send out proxy materials to shareholders, advocating in favor of Cook's candidacy and against Oliver's. Doc. 37, Mot. Prelim. Inj., 9. With the May 22, 2019 vote

approaching, the Horizon Group sought assurances from the trustees that a vote would be held as scheduled. *Id.* at 10. On May 8, 2019, the trustees announced that a special meeting would occur on May 22, but that no vote would occur; instead, the trustees stated that the meeting would be adjourned until June 6, 2019. *Id.* at 11. The reason for the delay is disputed: the TPL and the trustees claim that the delay was necessary because of a "fundamental change" in Cook's candidacy that required proxy supplementation; Counterclaim Plaintiffs argue that the delay was manufactured to "buy time" to make a case against Oliver. *Compare* Doc. 15, Am. Compl., ¶¶ 38–40 *with* Doc. 37, Mot. Prelim. Inj., 10–11. Additionally, the parties dispute whether the trustees had the power under the TPL's DoT to adjourn or delay the meeting. *Compare* Doc. 15, Am. Compl., ¶¶ 38–40 *with* Doc. 37, Mot. Prelim. Inj., 10–11.

Nonetheless, leading up to the May 22 meeting, the parties continued to wage competing proxy campaigns. Plaintiffs allege that Counterclaim Plaintiffs "engaged in a concerted misinformation campaign intended to manipulate the trustee election process . . . ." Doc. 55, Pls.' Mot., 3 (citing Doc. 15, Am. Compl., ¶¶ 56, 91). Plaintiffs also detail in their amended complaint how they provided Oliver with a questionnaire so they could reconsider his candidacy. Doc. 15, Am. Compl., ¶ 41. Plaintiffs allege the questionnaire solicited information on Oliver's background, business interests, and conflicts. *Id.* Plaintiffs further allege that while both Young and Cook completed the questionnaire, Oliver refused. *Id.* In a public response letter, Oliver asserted that the questionnaire was unnecessary because the trustees had already rejected his candidacy and because he would include all necessary information in proxy materials. Doc. 56, Countercl. Pls.' Resp., 6. Counterclaim Plaintiffs aver that between April 8 and May 22, the trustees filed "at least 49 different proxy solicitation materials that attacked Mr. Oliver's character directly and through innuendo." *Id.*

These proxy materials allegedly focused on Oliver's failure to respond to the trustees' questionnaires and requests for information. *Id.* at 6–7.

Ultimately, on May 16, 2019, the trustees announced in a public letter that they would disqualify Oliver from serving as a trustee because he had failed to respond to the questionnaire. *Id.* at 8. This letter also purportedly "demanded" responses to additional information requests by May 20. *Id.* Oliver responded on May 20. *Id.* Oliver claims he answered the additional questions asked in the May 16 letter, but he continued to challenge the trustees' demands that he answer the questionnaire as a prerequisite to serve as a trustee. *Id.* Plaintiffs allege that the answers provided to the additional questions were inaccurate and incomplete. Doc. 15, Am. Compl., ¶ 44.

On May 21, 2019, the TPL and the trustees filed this lawsuit. Doc. 1, Orig. Compl. The trustees also announced that same day that the special meeting would be "postponed until further notice." Doc. 15, Am. Compl., ¶ 45. The trustees allege they took these actions because of Oliver's failure to provide the information requested and because of Counterclaim Plaintiffs' misstatements and omissions in proxy materials. *Id.*

But the Horizon Group was determined that the meeting take place. Doc. 56, Countercl. Pls.' Resp., 9. The special meeting was originally scheduled to occur on the morning of May 22, at Sidley Austin's office in Dallas, Texas. Doc. 15, Am. Compl., ¶ 48. When the law firm allegedly refused to allow TPL shareholders up to its offices, they were redirected to another floor of that building. Doc. 56, Countercl. Pls.' Resp., 9. A meeting was conducted; an election inspector was appointed; and shareholders cast votes, in person and via proxy. *Id.* at 9–10. In all, 48.1% of all outstanding shares were voted at this meeting: 47.2% of outstanding shares were voted in favor of Oliver's election, 0.7% were voted against, and 0.2% abstained. *Id.* at 9. Thus, Oliver received 98.1% of the votes that

were cast. *Id.* at 10. The trustees did not vote their proxies. *Id.* That same day, the trustees filed an amended complaint, which alleged that the meeting was invalid and that the vote was a sham. Doc. 55, Pls.' Mot., 4. In the amended complaint, they ask this Court to declare that the meeting was unlawful and that any votes cast at the meeting are invalid and void. Doc. 15, Am. Compl., ¶ 55. Plaintiffs also request that this Court declare that Oliver was not duly elected as a trustee and that he must make corrective disclosures before he is eligible to seek election. *Id.* ¶ 117.

On June 25, 2019, Counterclaim Plaintiffs filed a motion for a declaratory judgment and preliminary injunction. Doc. 37, Mot. Prelim. Inj. For injunctive relief, Counterclaim Plaintiffs request that trustees Barry and Norris be prohibited from: (1) taking action on the TPL's behalf without Oliver's participation as a "fully empowered trustee"; or (2) further attempting to postpone the election. *Id.* at 4. For declaratory relief, Counterclaim Plaintiffs seek declarations: (1) that the TPL was required to hold a special meeting to elect a successor trustee; (2) that Barry and Norris had no authority to (a) "unilaterally postpone" the special meeting or (b) "disqualify" Oliver from the election; and (3) that the vote at the May 22, 2019 meeting was valid—*i.e.* that Oliver was duly elected as a trustee. *Id.*

To complicate matters, Counterclaim Plaintiffs have also alleged that Barry was never duly elected as a TPL trustee. *Id.* at 3. Counterclaim Plaintiffs allege that they discovered, in a June 12, 2019 email from a NYSE representative, that many of the shares voted in favor of Barry in his 2017 trustee election were improperly cast via retailer brokers. *Id.* Because of this error, Counterclaim Plaintiffs seek a declaratory judgment that the vote at Barry's 2017 trustee election was invalid and that Barry was never duly elected as a TPL trustee. *Id.* at 4. They also seek an injunction prohibiting Barry from taking on action on the TPL's behalf until a new election can be held. *Id.*

Because Plaintiffs brought private claims under the Securities Exchange Act and because Oliver filed a motion for judgment on the pleadings, the Court held that the automatic discovery-stay provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA") was triggered. Doc. 42, Order Staying Discovery. However, after Counterclaim Plaintiffs' preliminary injunction motion was filed, the parties agreed that some discovery was necessary. The parties then filed an agreed motion requesting that the Court set a schedule and discovery protocol for the hearing on this motion. Doc. 48, Agreed Mot. The Court did so. Doc. 53. While both parties have agreed to produce certain documents, witnesses, and interrogatory responses to each other before the hearing, Plaintiffs have additional requests that the parties have not reached agreement on. Thus, as specified in the discovery scheduling order, Plaintiffs filed an expedited motion for limited discovery on July 18, 2019. Doc. 54, Pls.' Mot. Counterclaim Plaintiffs responded on July 23, 2019. Doc. 56, Countercl. Pls.' Resp. And Plaintiffs replied that same day. Doc. 57, Pls.' Reply. The motion is now ripe for review.

## II.

## LEGAL STANDARD

The PSLRA provides that:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

15 U.S.C. § 78u-4(b)(3)(B). "The party seeking expedited discovery bears the burden of demonstrating that the PSLRA's mandatory stay should be lifted." *Davis v. Duncan Energy Partners L.P.*, 801 F. Supp. 2d 589, 592 (S.D. Tex. 2011) (citing *In re Fannie Mae Sec. Litig.*, 362 F. Supp. 2d 37, 38 (D.D.C. 2005)). Here, Plaintiffs argue that the particularized discovery they seek is necessary

to prevent undue prejudice to them in contesting Counterclaim Plaintiffs' preliminary injunction motion. Doc. 55, Pls.' Mot., 2.

"A discovery request is 'particularized' within the meaning of 15 U.S.C. § 78u-4(b)(3)(B) if the 'party seeking discovery under the exception . . . adequately specif[ies] the target of the requested discovery and the types of information needed.'" *Davis*, 801 F. Supp. 2d at 592 (quoting *In re Fannie Mae*, 362 F. Supp. 2d at 38). "Whether a discovery request is sufficiently 'particularized' depends on 'the nature of the litigation.'" *Id.* (quoting *In re Royal Ahold N.V. Sec. Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004)).

"Undue prejudice" under the PSLRA means "improper or unfair treatment amounting to something less than irreparable harm." *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 129, 130 (S.D.N.Y. 2003) (quoting *Vacold LLC v. Cerami*, 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001)). Courts "have partially lifted the discovery stay on the ground of 'undue prejudice' when defendants would be unfairly shielded from liability through pursuit of their pending action or when plaintiffs would be placed at an unfair advantage to make informed decisions about litigation and settlement strategy without access to documents that form the core of the proceeding." *Mori v. Saito*, 802 F. Supp. 2d 520, 524 (S.D.N.Y. 2011) (quoting *Fisher v. Kanas*, 2006 WL 2239038, at *2 (E.D.N.Y. Aug. 4, 2006)). "Undue prejudice does not arise, however, 'from a delay in gathering evidence' because this 'delay is an inherent part of every stay of discovery required by the PSLRA.'" *Id.* (quoting *In re Smith Barney Transfer Agent Litig.*, 2006 WL 1738078, at *2 (S.D.N.Y. June 26, 2006)).

# III.

## ANALYSIS

Plaintiffs ask the Court to partially lift the PSLRA stay so they can seek discovery on three issues: (1) "communications between or among the dissident group [*i.e.* the Horizon Group] and shareholders, persons attending the May 22, 2019 meeting, and others"; (2) "discovery relating to Defendants' candidacy and conflicts of interest"; and (3) "limited third-party discovery requests for both Plaintiffs and Counter-Plaintiffs." Doc. 55, Pls.' Mot., 2. Counterclaim Plaintiffs resist the first two of these requests but do not seem to object to the last. The Court addresses each in turn.

### A. *Communications Related to the May 22, 2019 Meeting*

Plaintiffs first request communications between the Counterclaim Plaintiffs, TPL shareholders, persons attending the May 22 meeting, and other parties that relate to the election and proxy campaign. Doc. 55, Pls.' Mot., Ex. 1, 1–2. Plaintiffs argue that they have a particularized need for this discovery because this discovery will be "critical" to the Court's decision on the validity of the vote at the May 22, 2019 meeting. *Id.* at 11. Because Counterclaim Plaintiffs seek both declarations that the vote was valid and injunctive relief preventing the TPL from taking action without Oliver's participation as a trustee, Plaintiffs argue that this discovery is needed to determine whether Counterclaim Plaintiffs "engaged in illegal or misleading activity in connection with the solicitation of proxies for that meeting." *Id.* at 11–12. Plaintiffs also argue the discovery is necessary to dispute Counterclaim Plaintiffs' assertions that the trustees had no authority to delay the special meeting. *Id.* at 12. Counterclaim Plaintiffs oppose this category of requests by arguing that Plaintiffs have not explained why these requests are relevant to the preliminary injunction motion. Doc. 56, Countercl. Pls.' Resp., 20. Specifically, they argue that these requests relate only to Plaintiffs'

securities claims or are part of a fishing expedition in search of a claim. *Id.*

The Court finds that Plaintiffs have sufficiently shown a particularized need for this first category of discovery. Counterclaim Plaintiffs' argument—that communications between themselves and others related to the May 22, 2019 meeting are irrelevant—is unpersuasive. Counterclaim Plaintiffs have asked this Court to determine the validity of the vote and Oliver's status as a trustee. *See* Doc. 37, Mot. Prelim. Inj., 4. The Court finds that the discovery requests regarding these communications would be relevant to decide these issues. Further, these requests are unlike those that courts have denied in other PSLRA-stay cases. *See, e.g.*, *Davis*, 801 F. Supp. 2d at 593–94 (holding discovery requests were not particularized because plaintiffs offered no limit to the scope of depositions and sought "a vast number of documents"). Rather, the requests for this category are sufficiently particularized, as to both the parties they are directed and to a clearly defined universe of documents (*i.e.* communications related to the meeting and the vote). They are also limited to the relevant time frame—February 1, 2019 to May 22, 2019. Last, the Court finds that Plaintiffs would be unfairly prejudiced without this discovery. The "unfairness" in this situation stems from Counterclaim Plaintiffs' decision to seek an early and expedited preliminary injunction before their motion for judgment on the pleadings was resolved. Thus, Counterclaim Plaintiffs would be "unfairly shielded" from liability in resolving their preliminary injunction motion, while Plaintiffs would be placed at an "unfair advantage to make informed decisions" in defending against Counterclaim Plaintiffs' motion. *See Mori*, 802 F. Supp. 2d at 524 (quoting *Fisher*, 2006 WL 2239038, at \*2).

The Court therefore **GRANTS** Plaintiffs' motion as to these requests.

B.      *Discovery Related to Oliver's Candidacy and Conflicts*

Plaintiffs' second category of discovery requests relates to Oliver's background, qualifications,

and business interests. Doc. 55, Pls.' Mot., Ex. 1, 2–8. Plaintiffs claim they have a particularized need for this discovery because Oliver's potential conflicts and conduct "are at the heart of this case." *Id.* at 12. As it relates to the preliminary injunction motion, Plaintiffs contend that the discovery is necessary because it is relevant to whether Oliver is qualified to be a trustee, and thus relevant to Counterclaim Plaintiffs' request to declare Oliver a valid trustee. *Id.* They also argue Oliver's qualifications are relevant to the validity of the vote, as they could implicate whether misrepresentations were made to shareholders in the course of the election. *Id.* at 13. Counterclaim Plaintiffs respond that this category of requests is not particularized because it is irrelevant to the issues that they have asked the Court to decide in their preliminary injunction motion; specifically, Oliver's qualifications are not relevant, they argue, to determine whether the trustees had the authority to delay the special meeting or whether the vote was valid. Doc. 56, Countercl. Pls.' Resp., 19. Counterclaim Plaintiffs also take issue with one document request in particular, request for production number 39. This RFP asks Oliver to produce "All Documents or Communications Relating to any entities . . . that You control (directly or indirectly); serve as an Executive Officer, partner or director for; or which You hold 1.0% or more of the voting securities." Doc. 55, Pls.' Mot., Ex. 1., 4. Counterclaim Plaintiffs argue this RFP is overly broad and not temporally limited in any fashion.

To start, similar to the first category of discovery, the Court finds that Plaintiffs have sufficiently shown that this category of requests is sufficiently particularized and necessary to prevent undue prejudice to them. The Court believes that Oliver's qualifications will be relevant in determining whether he made misrepresentations to shareholders in proxy materials before the May 22, 2019 meeting, which in turn could affect the validity of that meeting and the shareholder vote.

It could also be a factor in the Court's holding on whether to enjoin the TPL from acting without Oliver in place as a trustee and on whether, in the alternative, a new election is needed. Despite Counterclaim Plaintiffs' objections to the contrary, the Court finds that Plaintiffs would be put at a serious disadvantage in this litigation if they were prevented from seeking this discovery before the preliminary injunction hearing. At its core, the issue the Court is being asked to decide is whether the meeting and the vote electing Oliver as trustee was valid. This closely mirrors what Plaintiffs are seeking in their complaint, and an adverse decision could foreclose their claims. Doc. 15, Am. Compl., ¶ 117. While the Court has not found and the parties have not pointed to a case like this one—where the "defendant" benefitting from the discovery stay presses the merits issue forward by requesting affirmative relief of his own—the Court believes the standards cited above are applicable: the stay should not be used to place Plaintiffs at an informational disadvantage at an evidentiary hearing they never requested. Relatedly, any burden of which Counterclaim Plaintiffs complain is brought about by their own requests for relief. If Counterclaim Plaintiffs truly wished to avoid the costs of discovery here, they would not have requested an immediate evidentiary hearing on the issues raised in Plaintiffs' complaint.

The Court **GRANTS** Plaintiffs' motion as to this category of requests as well. However, RFP number 39 is granted only to the extent it is limited as specified in Plaintiffs' reply. *See* Doc. 56, Pls.' Reply, 9 ("Plaintiffs are willing to limit this request for purposes of the Declaratory Judgment/PI Motion to *documents sufficient to show* any and all entities that Defendant owns, controls (directly or indirectly); serves as an Executive Officer, partner, or director for; or of which Defendant holds 5.0% or more of the voting securities.").

Additionally, the Court **GRANTS** Plaintiffs' procedural request to identify the persons who

help in answering these interrogatories. *See* Doc. 55, Pls.' Mot., Ex. 1, 8 ("Category 3: Procedural Requests").

C.     *Depositions of Third Parties*

The last category of discovery requested is third-party depositions of a NYSE analyst and a NYSE corporate representative. Doc. 55, Pls.' Mot., 13. Plaintiffs argue that they have a particularized need for these depositions to respond to Counterclaim Plaintiffs' allegation that Barry's 2017 election was invalid. *Id.* Counterclaim Plaintiffs do not seem to oppose these requests. *See* Doc. 56, Countercl. Pls.' Resp., 22 (stating they are not opposed to the deposition of one NYSE representative and not objecting to the deposition of the analyst). The Court finds that Plaintiffs have met their burden with respect to this last request as well and thus **GRANTS** Plaintiffs' motion as to it.

**IV.**

**CONCLUSION**

For the reasons given above, the Court **GRANTS** Plaintiffs' Expedited Motion for Limited Discovery Related to Counter-Plaintiffs' Declaratory Judgment and Preliminary Injunction Motion (Doc. 54). The stay of discovery under the PSLRA is partially lifted for the limited purpose of allowing Plaintiffs to pursue the discovery discussed in their motion and granted herein. For all other purposes, the discovery stay remains in place until the Court rules on the Counterclaim Plaintiffs' motion for judgment on the pleadings. *See* Doc. 42, Order Staying Discovery.

Accordingly, Counterclaim Plaintiffs are **ORDERED** to respond to Plaintiffs' discovery requests listed in Exhibit 1 to their motion by August 1, 2019. Any privilege log shall be produced by August 4, 2019. Discovery shall be otherwise conducted and produced in accordance with the

Court's July 15, 2019 Order (Doc. 53).

        **SO ORDERED.**

        **SIGNED: July 26, 2019.**

                                _____
                                JANE J. BOYLE
                                UNITED STATES DISTRICT JUDGE